1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11   SHERRI A. RAKOWSKI,                        CASE NO. 1:12-CV-1851 GSA

12                    Plaintiff,
                                                ORDER REGARDING PLAINTIFF'S
13            v.                                 SOCIAL SECURITY COMPLAINT

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
15
                     Defendant.
16

17

18
                              **INTRODUCTION**
19

20          Plaintiff, Sherri A. Rakowski ("Plaintiff"), seeks judicial review of a final decision of the

21   Commissioner of Social Security (the "Commissioner") denying her application for Supplemental

22   Security Income payments under Title II of the Social Security Act. The matter is pending before

23   the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable

24   Gary S. Austin, United States Magistrate Judge.[1]

25                  **SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

26
            On January 27, 2010, Plaintiff filed an application for supplemental security income
27

28   _____
     [1] The parties consented to the jurisdiction of a United States Magistrate Judge.  (Docs. 9 & 11).

benefits, alleging disability beginning February 25, 2009.[2] AR 134-135. The application was

denied on February 1, 2010, and upon reconsideration on February 9, 2011. AR 67-70, 66.

Subsequently, on December 5, 2011, Administrative Law Judge, Judson Scott ("ALJ"), conducted

a hearing on Plaintiff's claim. AR 31-60. Plaintiff appeared with a representative and testified at

the hearing. AR 31-60.  The ALJ also considered the testimony of three other individuals: John

Morse, M.D., an impartial medical expert; Dr. Shakil Mohammed, M.D., an independent

psychiatric medical expert; and Kenneth Ferra, a vocational expert.  AR 31-60.

In a decision dated December 23, 2011, the ALJ found that Plaintiff was not disabled.  AR

10-29.  On September 20, 2012, the Appeals Council denied Plaintiff's request for review, making

the ALJ's decision the Commissioner's final decision. AR 1-7.  Plaintiff then commenced this

action. (Doc. 1).

## THE DISABILITY DETERMINATION PROCESS

To achieve uniformity in the decision-making process, the Commissioner has established a

sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §

404.1520(a)-(f).  Specifically, the ALJ is required to determine: (1) whether a claimant engaged in

substantial gainful activity during the period of alleged disability; (2) whether the claimant had

medically-determinable "severe" impairments; (3) whether these impairments meet or are

medically equivalent to one of the listed impairments set forth in 20 CFR § 404, Subpart P,

Appendix 1; (4) whether the claimant retained the residual functional capacity ("RFC") to perform

his past relevant work;[3] and (5) whether the claimant had the ability to perform other jobs existing

in significant numbers at the regional and national level. 20 CFR § 404.1520(a)-(f).

---

[2] On January 27, 2010, Plaintiff filed an application for supplemental security income benefits under Title XVI. AR
134-135. At the hearing on the Title XVI application, the ALJ granted Plaintiff's request to withdraw her Title XVI
application and pursue the Title II application. AR 13, 34.
[3] Residual functional capacity captures what a claimant "can still do despite [his] limitations."  20 CFR § 404.1545.
"Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the
ALJ assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir.
2007).

Using the five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 23-24.  More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  AR 15.   Further, the ALJ identified multilevel degenerative disc disease of the lumbar spine, bilateral foot neuropathic neuropathy, moderate depressive disorder, and pain disorder secondary to general medical condition as severe impairments.  AR 15.  Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listing impairments.  AR 16-17.

Based on a review of the entire record, the ALJ determined that Plaintiff has the RFC to perform light work with modifications.  More specifically, the ALJ found that Plaintiff could sit, stand, and walk for six out of eight hours, with the usual breaks and the use of her back brace if desired; frequently perform postural abilities, except no climbing of ropes, ladders or scaffolds; no work at unprotected heights or around hazardous moving machinery; perform simple repetitive one to three step tasks; have frequent interaction with co-workers, supervisors and the public; and have a low stress occupation.  AR 17.  After noting that Plaintiff could not perform her past relevant work as a teacher's aide, the ALJ found that Plaintiff could perform other work that existed in significant numbers in the local and national economies.  AR 23.  Therefore, he concluded that Plaintiff was not disabled. AR 23-24.  In making this determination, the ALJ considered Plaintiff's statements regarding the intensity, persistence, and functionally limiting effects of her pain and found Plaintiff's statements were not credible. AR 17-18.  Plaintiff now challenges the ALJ's credibility findings.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether (1) it is supported by substantial evidence and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). "Substantial evidence means more than a scintilla but less than a

preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id*. Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

## DISCUSSION

### I.   The ALJ Properly Assessed Plaintiff's Credibility.

Plaintiff argues that the ALJ did not articulate clear and convincing reasons for rejecting Plaintiff's pain and limitation testimony. Doc. 22 at 7:2-8. Specifically, Plaintiff contends that the ALJ's reliance on objective medical evidence in conjunction with Plaintiff's treatment choices were insufficient reasons to find her not credible. Doc. 22 at 8:6-9:5. Defendant argues that the ALJ's analysis is supported by substantial evidence. Doc. 25 at 7:3-4, 7:19-21. A review of the record establishes that the ALJ's credibility determination was proper.

#### A.  *Applicable Law*

In evaluating the credibility of a claimant's testimony regarding subjective complaints of pain and other symptoms, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id*. The claimant is not required to show that the impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id*. If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection. *Id*.

Regarding credibility determinations by an ALJ, the Ninth Circuit has held as follows:

The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)(citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009); 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling ("SSR") 96-7p, available at 1996 WL 374186.  Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

### B.  Analysis

The ALJ found that Plaintiff suffered from medically determinable impairments that could reasonably be expected to produce the alleged symptoms of pain in her feet. AR 16, 18.[4] However, the ALJ determined that Plaintiff's statements about the intensity, persistence, and limiting effects of those symptoms were not credible to the extent they were inconsistent with the residual functional capacity assessment.  AR 18. In making this determination, the ALJ considered Plaintiff's testimony, the objective medical evidence, statements made by physicians concerning the nature and severity of the symptoms, Plaintiff's potential secondary gain motivation, as well as inconsistencies regarding Plaintiff's activities and her responsiveness to treatment.  AR 18-22.

### 1.  Plaintiff's Testimony

At the hearing, Plaintiff testified that she was unable to stand due to sharp pain in her feet.

---

[4] It is not clear that the medical record supports a finding of a medically determinable impairment. Plaintiff saw several doctors for her foot symptoms, but all testing had been negative and no objective basis for the foot pain had been found. AR 16. Reviewing physician, Dr. John Morse, specifically found that Plaintiff's medical record did not demonstrate a medically determinable impairment. AR 20. However, the ALJ gave Plaintiff the benefit of doubt with respect to her bilateral foot complaints, and found that Plaintiff suffered from medically determinable impairments that could reasonably be expected to produce the alleged symptoms of pain in her feet. AR 16, 18.

AR 35. She walks around during the day, but mostly sits in a reclining chair with her feet elevated. AR 35. Her shoes and socks feel very tight and uncomfortable to her, but she can tolerate wearing a special shoe for an hour or two. AR 36. She can be on her feet for about twenty to thirty minutes, and the pain becomes more severe the longer she is on her feet. AR 36, 42. Plaintiff typically walks in twenty to thirty minute increments, four to five times a day. AR 43. She pushes herself to walk around, pick up around the house, go shopping, and attend doctor's appointments.  AR 38.

Plaintiff stated that it is difficult to walk up and down stairs because she feels unbalanced. AR 39. She is careful when walking both inside and outside because she sometimes trips and falls. AR 40. She also has to massage and elevate her feet after standing to alleviate the pain. AR 38-39, 42.

With regard to her treatment, Plaintiff testified that her doctors told her that they did not know what her condition was or whether it would improve.  It was recommended that she elevate her feet and "take it easy." AR 41.  She has been taking medication since May 2009, which reduced the pain and made it tolerable to walk. AR 42, 45.

   2.  *Objective Medical Evidence*

After considering Plaintiff's subjective testimony outlined above, the properly reviewed the objective medical evidence and found that it did not corroborate Plaintiff's claims.  The ALJ noted that Plaintiff had "extensive workup[s]" for neuropathy that revealed negative results.  Moreover, Plaintiff's description of the persistence and severity of pain appeared implausible in light of the objective medical evidence.  AR 18, 22. These findings are supported by the medical record as several medical evaluations yielded no etiological basis to explain Plaintiff's symptoms.

In particular, in February 2009, Plaintiff was treated by her podiatrist, Ky Ho, M.D.  At that time, Plaintiff was diagnosed with plantar fasciitis, and had a normal range of motion with no swelling, crepitus, or deformity.  AR 18, 371-379.  In June 2009, Plaintiff saw another podiatrist, Gregory Dwight Hartman, D.P.M, for a second opinion.  AR 495-497.  Dr. Hartman found no

objective evidence of any condition other than plantar fasciitis. AR 18, 497.  In April 2011, Plaintiff saw a third podiatrist, J. Boyd Dodder, D.P.M, due to swelling and temperature sensitivity in her feet. AR 19, 1112-1113.  Dr. Dodder ruled our plantar fasciitis and noted Plaintiff's condition appeared to be neurogenic rather than musculoskeletal.  AR 19, 1112-1113, 1128-1129.

The ALJ noted that examinations by neurologists revealed similar results.  In May 2009, Plaintiff had an initial neurological evaluation by Monika Aggarwal Gupta, M.D. At that time, MRIs of both of Plaintiff's feet were normal, however, she was diagnosed with small fiber neuropathy of unknown etiology based on her reported subjective symptoms. AR 18, 320-324, 1122-1123.  In September 2009, Plaintiff saw a second neurologist, A. A. Inocentes, M.D. AR 482-484. Dr. Inocentes found mild muscle atrophy in the lower extremities with mild curling of the toes and visible tendons, but found it unlikely that there was small fiber neuropathy. AR 19, 482-484. In January 2010, Plaintiff again saw Dr. Gupta for a neurology follow-up visit. AR 449. Dr. Gupta reported that MRIs of Plaintiff's feet were normal with no evidence of osteoporosis or polyneuropathy involving the large fibers in the lower extremities. AR 19, 449-451.  A fourth neurological examination, performed on March 1, 2011, by Richard Alexan-Shirabad, M.D., was normal.  He recommended a biopsy to rule out small fiber neuropathy.  The biopsy was negative. AR 19, 1116, 1119, 1120. In September 2011, a fifth evaluation by neurologist, Said Beydoun, M.D. also revealed normal neurological objective findings. AR 19, 1135-1139. He recommended additional testing, but the ALJ properly noted that the recommended tests had previously been performed at Kaiser Medical Center and had not revealed any definitive diagnosis. AR 19-20.

The ALJ also gave great weight to the findings of independent medical expert, John Morse, M.D. who testified at the hearing.  AR 20-21, 48-52.  After reviewing all of the medical evidence, Dr. Morse opined Plaintiff could engage in light work. AR 20. He also found that Plaintiff suffered from tingling and numbness in her feet, but that the objective data failed to provide a clear picture as to the etiology of her complaints. AR 20, 48-49.  He testified that the health providers did not

give specific diagnoses for Plaintiff's conditions, but rather "coined terms such as regional pain

syndrome and neuropathic neuropathy" to explain her condition.[5]  AR 20, 49.

An ALJ may not rely solely on the inconsistency between objective findings and a

claimant's subjective claims in order to reject the latter, *Light*, 119 F.3d at 792, however, an ALJ

may properly consider such an inconsistency as one factor among others in making a credibility

determination.  *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Rollins v. Massanari*, 261

F.3d 853, 857 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir.

1999); 20 CFR § 404.1529(c)(2). Medical evidence is a useful consideration in making

conclusions about a claimant's symptom testimony. SSR 97-6p, (medical evidence "is a useful

indicator to assist us in making reasonable conclusions about the intensity and persistence of" an

individual's symptoms and the effects those symptoms may have on the individual's ability to

function.)(quoting 20 CFR 416.929(c)(2)).  A minor medical condition with all other tests

reporting normal also provides a basis for rejecting a claimant's testimony of severity of

symptoms. *Tidwell v. Apfel*, 161 F.3d 559, 601-602 (9th Cir. 1998).

The Court has reviewed the evidence and finds that the ALJ's reliance on the objective

medical evidence was proper and is supported by substantial evidence.  Plaintiff was diagnosed

with plantar fasciitis in early 2009, and subsequent examinations did not reveal significant

neurological or musculoskeletal abnormalities.  This is a clear and convincing reason for rejecting

Plaintiff's testimony. *Tidwel,*161 F.3d at 601-602.

   *3.  Additional Reasons*

Contrary to Plaintiff's arguments, the ALJ also gave several other clear and convincing

reasons for rejecting her testimony.  For example, the ALJ's decision contained comments from

physicians to discredit Plaintiff's symptoms. AR 18.  Specifically, Dr. Hartman stated he was not

---

[5]  As previously noted, in formulating the RFC, the ALJ adopted Dr. Morse's opinion, but gave Plaintiff the benefit of the doubt and found she was somewhat more limited than Dr. Morse's findings. AR 21.

sure why Plaintiff was having so much pain in her feet since there is no objective evidence of any

condition other than plantar fasciitis. AR 18, 497.  Additionally, after noting several of Plaintiff's

tests were normal, Dr. Ho, Plaintiff's podiatrist, commented that Plaintiff' condition was most

consistent with peripheral neuropathy, but that she was not exhibiting numbness in her toes.  Dr.

Ho opined that Plaintiff may have secondary gains from being out of work, and advised Plaintiff

that he would not continue her disability. AR 18, 336, 347.

An ALJ may consider testimony from physicians and third parties concerning the nature,

severity, and effect of the symptoms of which the claimant complains.  *Light*, 119 F.3d at 792. "In

determining the credibility of the individual's statements, the adjudicator must consider […]

statements and other information provided by treating or examining physicians […] about the

symptoms." SSR 96-7p.  Similarly, an ALJ may consider motivation and the issue of secondary

gain in rejecting symptom testimony.  *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016,

1020 (9th Cir. 1992)(documented motivation to obtain social security benefits is a basis for an

adverse credibility determination); *Schaefer v. Colvin*, 2014 WL 568915, *5 (D. Or. Feb. 3, 2014)

(The ALJ reasonably concluded that secondary gain motivation undermined the plaintiff's

credibility); *Wonsey v. Astrue*, 2012 4479968, *7-8 (W.D. Wash. Sept. 28, 2012)(*citing Tidwell v.*

*Apfel*, 161 F.3d at 6020)(an ALJ may consider motivation and the issue of secondary gain in

rejecting symptom testimony).  Here, the ALJ's reliance upon the physicians' statements is

supported by substantial evidence given the lack of medical evidence, coupled with the physicians'

opinions regarding Plaintiff's treatment.  Thus, the ALJ properly relied on these factors as clear

and convincing reasons supporting his credibility determination.

Finally, the ALJ properly noted that there were inconsistencies between Plaintiff's reports

of disabling pain, her response to treatment, and her activities.  On the one hand, Plaintiff indicated

she cannot walk for long periods, her legs must be elevated for most of the day, and she suffers

from severe pain. AR 35-45.  On the other hand, reports from service providers revealed she had

responded well to medical treatment in the past, and she is able to participate in activities such as walking her dogs.  AR 19, 21.

Specifically, the ALJ noted that in September 2009, Plaintiff's foot pain was reported as four on a ten-point scale, which was an improvement from prior appointments that year.  AR 18, 482.  Moreover, that same month, Plaintiff reported a 50% improvement after taking her prescription of Gabatentin regularly. AR 18, 475.   Likewise, in September 2010, Plaintiff participated in a pain management program. AR 19, 1024-1053. Dr. Crittle, Ph.D., the supervising psychologist of the program, noted that Plaintiff was participating in activities on a daily basis and taking walks with her dog. AR 19, 1025.  Plaintiff also reported improvement in her exercise tolerance and that her foot pain had been reduced to zero. AR 19, 1025.  By October 2010, Plaintiff continued to improve.  She was taking Gabapentin, which helped reduce the burning and tight feeling in her feet, and was able to walking her dog about three-fourths of a mile three days a week. AR 19, 1025. She was discharged from the pain management program reporting zero pain with all goals met. AR 19,1025.

The ALJ noted that Plaintiff's psychological condition had also improved during this time period.  In particular, Plaintiff had been seeing a therapist, Sue Speake, MS, MFT, for depression as a result of her foot pain and the disabling impact it had on her life. AR 21, 570-571. In April 2009, Plaintiff reported she was struggling daily with pain and it had become totally distracting. AR 21, 571-575. However, she started individual therapy and began taking Prozac.  By the end of June 2009, Plaintiff reported that she was feeling better and no longer required therapy. AR 21, 250. In September 2010, Dr. Crittle noted that Plaintiff's mood was stable. AR 21, 1037-1038.

Here, the ALJ properly relied on Plaintiff's prior response to treatment and her activities to discredit her allegations of disabling pain. The ALJ did not find Plaintiff's subjective reports of pain credible given her prior response to treatment, her improvement in her psychological condition, and her ability to regularly walk her dogs. *See Bray*, 554 F.3d at 1227 ("In reaching a

credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors."); *Tommasetti*, 533 F. 3d at 1039 (An ALJ may rely on ordinary techniques of credibility evaluation such as prior inconsistent statements, and other testimony by the claimant that appears less than candid.) Thus, the ALJ's reliance on these factors are clear and convincing reasons for rejecting Plaintiff's testimony.

Notwithstanding the above, the Plaintiff argues that the ALJ's reliance on the fact that Plaintiff had participated in unusual behavior by requesting treatment modalities that have been unsuccessful in the past, as well as the fact that she does yoga, are  improper reasons to question Plaintiff's credibility.  A review of the record reviews that these findings are not supported by substantial evidence.  However, because the ALJ cited other clear and convincing reasons, these errors are harmless.  *See Batson v. Commissioner of Social Security*, 359 F.3d 1190, 1197 (9th Cir. 2004) (upholding ALJ's credibility determination even though one reason may have been in error). *See also, Carmickle v. Commissioner of Social Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("So long as there remains "substantial evidence supporting the ALJ's conclusions on ... credibility" and the error "does not negate the validity of the ALJ's ultimate [credibility] conclusion" such is deemed harmless and does not warrant reversal").  Thus, even given these errors, the credibility determination was proper.  Here, the ALJ cited specific, clear and convincing reasons, that were supported by the record as a whole, for rejecting Plaintiff's subjective complaints regarding the intensity, duration, and limiting effects of her symptoms. *See Batson,* 359 F.3d at 1196–97; *Thomas,* 278 F.3d at 959.

## CONCLUSION

The Court finds that the ALJ's decision is free of legal error and is supported by substantial evidence.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Acting Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter

11

1    judgment in favor of Defendant, Carolyn W. Colvin, the Acting Commissioner of Social Security,

2    and against Plaintiff, Sherri A. Rakowski.

3

4    IT IS SO ORDERED.

5        Dated:    **September 30, 2014**                    **/s/ Gary S. Austin**

6                                    UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28